IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| TRACY MICHELLE ROWLAND, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No. 4:14-cv-00019 | |
| ) | | |
| CAROLYN W. COLVIN, ) | | |
| Acting Commissioner of Social Security, ) | By: | Joel C. Hoppe |
|     Defendant. ) | | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Tracy Michelle Rowland seeks review of the Commissioner of Social Security's ("Commissioner") final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f. On appeal, Rowland argues that the Administrative Law Judge ("ALJ") erred in finding that her impairment did not meet the listing for intellectual disability, 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05 (2014).[1] This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and this case is before the undersigned magistrate judge by referral under 28 U.S.C. § 636(b)(1)(B). After carefully reviewing the administrative record, the parties' briefs, and the applicable law, I find that the ALJ's decision is supported by substantial evidence, and I recommend that the Commissioner's decision be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g),

---

[1] Under Rosa's Law, all reference in federal law to "mental retardation" was changed to reference "intellectual disability." Pub. L. No. 111-256, 124 Stat. 2643. This report and recommendation will follow suit.

1

1383(c)(3); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (governing claims for DIB), 416.905(a) (governing adult claims for SSI). Social Security ALJs

2

follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Rowland was born on August 24, 1971, Administrative Record ("R.") 205, and at the time of the ALJ's decision was considered a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). She is a high school graduate, R. 46–47, 286, and has prior work history as a salad bar stocker in a restaurant and a kitchen helper in a nursing home, R. 42, 49–50, 236. Rowland applied for DIB on December 17, 2010, R. 205–06, and for SSI on September 8, 2010, R. 207–13. She alleged a disability onset date of July 31, 2010, based on intellectual deficiency and mental problems. R. 205, 231, 235.

The Commissioner rejected Rowland's applications initially and on reconsideration. R. 12. On September 7, 2012, the ALJ held an administrative hearing at which Rowland was represented by counsel. *See generally* R. 31–82.[2] In an opinion dated February 1, 2013, the ALJ found that Rowland had "questionable borderline intellectual functioning," which qualified as a severe impairment. R. 21. The ALJ found that Rowland's affective and personality disorders and obesity were not severe impairments. R. 15–16. The ALJ determined that Rowland's intellectual

---

[2] A previous administrative hearing had been continued to allow Rowland to obtain counsel. R. 12, 83–86.

3

disability did not meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17–19. As to Rowland's residual functional capacity ("RFC"), the ALJ determined that she could perform a full range of work at all exertional levels that is simple and routine with more exposure to things than people. R. 19. Relying on the testimony of a vocational expert, the ALJ determined that Rowland could perform her past work as a kitchen helper and salad bar stocker. R. 23–25. The ALJ also found that Rowland could perform other jobs in the national economy. R. 25–26. Accordingly, the ALJ determined that Rowland was not disabled under the Act. R. 26. The Appeals Council denied Rowland's request for review, R. 1–3, and this appeal followed.

### III. Discussion

On appeal, Rowland argues that her intellectual disability satisfies the criteria of Listing § 12.05(B) in that she has a deficit in adaptive functioning and a full scale IQ score of 55. *See* Pl. Br. 2–5, ECF No. 17. A claimant's severe impairment meets a listing if it "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the [one-year] duration requirement." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (holding that the claimant must prove that she meets all of the criteria of the listing). A claimant who meets the medical criteria for a listing is presumed disabled regardless of his or her vocational profile; thus, satisfying the criteria a listing requires a claimant to demonstrate a greater severity of impairment than the baseline statutory disability standard of being unable to perform "substantial gainful activity." *Zebley*, 493 U.S. at 532.

Listing § 12.05 addresses intellectual disability or "significantly subaverage general intellectual functioning." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05. Prong 1 of this listing requires a showing of "deficits in adaptive functioning initially manifested during the

4

developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." *Id.* Prong 2 requires that the claimant meet one of four "level[s] of severity for the disorder," listed as A through D. *Id.* Rowland argues that her impairment satisfies requirement B, which requires a "valid verbal, performance, or full scale IQ of 59 or less." *Id.*

A.  Facts

Rowland attended school in Danville, Virginia. She graduated from high school in 1990 with a regular diploma, although she used the assistance of tutors throughout her schooling and had some special education classes. R. 40–41, 46–47, 62–63, 286, 319. She earned grades of every letter, but most fell in the range of B through D. *See* R. 286–90. On standardized tests in middle school and eleventh grade, Rowland received total scores that ranked nationally between the seventh and twenty-ninth percentiles. R. 287. In elementary school, she took some remedial classes and repeated first grade. R. 40–41, 288.

When she was 21 years old, Rowland moved out of her parents' house. R. 47–48. She lived by herself for a couple of months, but has lived with a housemate ever since. R. 44, 47–48, 57–58. Rowland's parents or housemates have helped her with many of the household duties. R. 44. She has a driver's license, and she passed the driving test on the first attempt, although someone read the test to her. R. 45.

Earnings reports show that Rowland worked every year from 1996 to 2010. R. 220–28. She worked as a kitchen helper at Roman Eagle nursing home from 2003 to 2010 and as a salad bar stocker at Western Sizzlin from 1996 to 2000. R. 50, 52, 220–28. Rowland testified at the administrative hearing that she had trouble keeping up with the pace in every job she has held and that she was forced to resign from Roman Eagle for that reason. R. 42–43. She nonetheless remained employed at Western Sizzlin until the business closed. R. 50.

5

On March 2, 2011, Frank Russell, Ph.D., conducted a mental status evaluation at the request of the state agency. R. 318–24. He noted that Rowland was cooperative, her affect was restricted, and her mood was subdued. R. 320–21. She provided short answers to his questions and spoke clearly. R. 320. Dr. Russell found that Rowland's immediate auditory memory was poor and her recent and remote memory abilities were fair. R. 321. Her fund of information and judgment or common sense were fair, and her calculation and abstract reasoning abilities were poor. *Id.* Dr. Russell administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV"), and he found that Rowland gave her best effort on the test. R. 322. The WAIS-IV results indicated a verbal comprehension index of 63, perceptual reasoning index of 60, working memory index of 58, processing speed index of 62, and full scale IQ of 55. *Id.* Dr. Russell noted that school records indicated that Rowland performed significantly below her age and grade level. R. 323. He wondered how she could obtain some average grades given Rowland's performance on the WAIS-IV, which produced scores in the moderate intellectual disability range. *Id.* Considering the school records and the current IQ scores, Dr. Russell opined that Rowland met the criteria for mild intellectual disability, rather than the moderate intellectual disability suggested by the WAIS-IV results alone. R. 322–23.

Dr. Russell assessed Rowland's functional ability based on the results of his mental status examination and the WAIS-IV. R. 322. He opined that she could not perform detailed and complex tasks, and that she may have trouble performing simple and repetitive tasks consistently. *Id.* She could maintain regular attendance and interact properly with supervisors, coworkers, and the public. *Id.* She may require additional supervision. *Id.*

From April 2011 to June 2012, Rowland saw Judy C. Broughton, M.N., F. N.P., for complaints of depression. Nurse Broughton consistently noted that Rowland was alert, oriented,

6

pleasant, and cooperative. R. 330, 347–52. At other times, Nurse Broughton also found that Rowland was well groomed, had an appropriate affect, and spoke with appropriate rate, tone, and content. R. 347. She diagnosed Rowland with depression, provided some counseling, and prescribed Celexa and Seroquel. R. 331, 339–52.

On June 5, 2012, Rowland had a telemedicine initial psychiatric evaluation with Lady Martinez Fernandez, M.D., regarding her depression, irritability, and withdrawn behavior. R. 359–62. Rowland provided her social history, including information about her school records, and Dr. Fernandez conducted a mental status examination. She reported that Rowland was appropriately groomed, alert, oriented, and cooperative. R. 361. Her speech was slow and monotone, and her thought process was linear and logical, but concrete. *Id.* Rowland's insight, judgment, and impulse control were fair to poor. *Id.* Dr. Fernandez diagnosed major depressive disorder and dependent personality traits. R. 361–62. She recommended medication adjustments for mood stabilization and psychotherapy. R. 362.

State-agency psychologists Leslie E. Montgomery, Ph.D., and Eric Oritt, Ph.D., reviewed Rowland's records to assess her impairments and limitations. Dr. Montgomery reviewed Dr. Russell's opinion and the WAIS-IV scores and determined that they conflicted with Rowland's standardized test results from her school record, work history, and activities of daily living. R. 88–89, 91. She found that Rowland had an intellectual disability that qualified as a severe impairment, but that it did not meet the criteria for Listing § 12.05. R. 90. As to Rowland's functional limitations, Dr. Montgomery determined that she was markedly limited in her ability to understand and remember detailed instructions and moderately limited in maintaining concentration, persistence, and pace and in interacting appropriately with the public. R. 92. On review, Dr. Oritt concurred with this assessment. *See* R. 121–24.

7

B.  *The ALJ's Findings*

At step three of the five-step analysis, the ALJ discussed whether Rowland met Listing § 12.05 for intellectual disability. R. 16–19. The ALJ noted that Rowland took some special education classes, but received a regular high school diploma and passed her driver's license test on the first attempt. R. 17. She also was gainfully employed for nine years. R. 17–18. The ALJ found that this evidence failed to show a deficit in adaptive functioning prior to age 22 and, on that basis, questioned the validity of the WAIS-IV results. R. 17–18 & n.3; *see also* R. 22 (similar findings at step four). The ALJ adopted the state-agency psychologists' opinions, although he did not discuss their findings as to Rowland's intellectual disability. R. 18. Ultimately, he determined that Rowland's intellectual disability did not meet or equal the requirements of Listing § 12.05. *Id.*

C.  *Analysis*

A claimant bears the burden of proving that his or her intellectual disability met or equaled the deficit in adaptive function and IQ prongs of Listing § 12.05. *Hancock*, 667 F.3d at 476. To meet the first prong, a claimant must have a deficit in adaptive functioning generally and the deficit must have manifested before age 22. *Id.* at 475. "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)). A claimant must show some, but not a complete, deficit. *Henry v. Colvin*, No. 3:13cv357, 2014 WL 856358, at *10 (E.D. Va. Mar. 4, 2014).

Rowland takes issue with the ALJ's assessment of her adaptive functioning and his findings of fact to support that assessment. Pl. Br. 4.

8

Reviewing the evidence of Rowland's intellectual disability, the ALJ found that Rowland had engaged in substantial gainful employment for nine years. R. 17–18. He then stated that an intellectual disability, which is a lifelong condition, would have always precluded competitive employment. R. 18. This statement goes too far. Rowland's past work as a kitchen helper and salad bar stocker was unskilled according to the vocational expert. R. 71. A lengthy period of employment, especially when at an unskilled level, does not foreclose the possibility that someone with an intellectual disability may at some point satisfy the criteria of Listing § 12.05. *See Carter v. Barnhart*, No. 4:05cv14, slip op. at 5, ECF No. 12 (W.D. Va. Feb. 10, 2006) (Kiser, J.). Nonetheless, I agree to an extent with the ALJ's more nuanced conclusion that Rowland's work history undermines her assertion that she has had a deficit in adaptive functioning since before age 22 that has rendered her incapable of working. R. 18. The record shows that Rowland washed dishes and performed other duties as assigned for many years at a nursing home. She also worked at a restaurant for nearly four years stocking a salad bar, and she left that job only because the business closed. This evidence supports the ALJ's conclusion that Rowland did not meet the criteria for Listing § 12.05.

The ALJ also considered Rowland's school records and her ability to obtain a driver's license. R. 17. Rowland testified that she has a driver's license and had driven in the past, but at that time did not drive. R. 45. Someone read the driver's license test to her, and she passed on her first try. From the record, it is unclear why someone read the test to Rowland. She has not claimed that she is unable to read or write, and she completed her own functional report in her disability application. *See* R. 256.

Rowland graduated from high school with a regular diploma, having repeated one grade and taken some special education classes. She earned mostly average grades. On standardized

9

tests she scored from the seventh to the twenty-ninth percentile. While her school records show below average performance, they do not show the requisite functional deficit. *See Vartanian v. Colvin*, No. 1:13cv293, 2014 U.S. Dist. LEXIS 107122, at *14–15 (M.D.N.C. Aug. 5, 2014) (upholding ALJ's determination that claimant did not exhibit deficits in adaptive functioning where he graduated from high school with average grades and was literate).

Additionally, Rowland's medical providers consistently noted that she was alert, oriented, pleasant, and cooperative. At times, treatment notes record that Rowland was well groomed, had an appropriate affect, and spoke with appropriate rate, tone, and content. Although Nurse Broughton and Dr. Fernandez treated Rowland for a mental rather than an intellectual impairment, they still did not diagnose or even note signs of intellectual disability, *see* R. 23, even though Dr. Fernandez was aware of Rowland's educational history, R. 361. These clinical assessments have some bearing on Rowland's adaptive functioning, including her ability to care for herself and her communication and social/interpersonal skills.

On the other hand, Rowland did state that people she lived with, whether her mother or a friend, helped her in many activities of daily living and that she has few interests or recreational activities. But this evidence does not undermine the ALJ's reliance on other evidence discussed above to support his finding at step three. Rowland has not shown that she had the requisite deficit in adaptive functioning from her developmental years; thus, the ALJ's Prong 1 analysis is supported by substantial evidence. *See Hancock*, 667 F.3d at 476.

Furthermore, Rowland has not satisfied the additional IQ requirement under § 12.05(B). Dr. Russell administered the WAIS-IV, which revealed that Rowland had a full scale IQ score of 55. This figure falls within the requirements of § 12.05(B), but IQ scores alone are not necessarily indicative of intellectual disability:

10

> The results of standardized intelligence tests may provide the data that help verify the presence of intellectual disability or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, [because] the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(D)(6)(a) (2014); *see also* Am. Psychological Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 37 (5th ed. 2013) ("The diagnosis of intellectual disability is based on both clinical assessment and standardized testing of intellectual and adaptive functions."). "Where an I.Q. score is inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of [intellectual disability]." *Powell v. Barnhart*, 6:04cv63, 2005 WL 1926613, at *4 (W.D. Va. Aug. 9, 2005).

Rowland suggests that the ALJ did not make a finding as to the validity of her IQ score. *See* Pl. Br. 4–5. The record belies this suggestion. Having found that Rowland's school performance, work history, and success on the driver's license test showed that Rowland did not have a deficit in adaptive function commensurate with Listing § 12.05's criteria, the ALJ "serious[ly] question[ed] the validity of the 55 IQ score." R. 18 n.3. As noted by Dr. Russell and the state-agency psychologists, Rowland's performance in school, although below-average, was inconsistent with an IQ score of 55 obtained when she was 39 years old. Their skepticism appears well placed. Rowland graduated from high school, could read and write, and placed between the seventh and twenty-ninth percentiles on standardized testing in middle and high school. The standardized test scores, which were obtained during four years of her academic career, "indicate a much higher level of functioning than the IQ scores would suggest." R. 98; *cf. Powell*, 2005 WL 1926613, at *3 (noting doctor's opinion that full scale IQ score of 61 placed

claimant in first percentile of intellectual functioning); *Wechsler Classifications*, http://faculty.pepperdine.edu/shimels/Courses/Files/Wechsler%20Class.pdf (noting an IQ score of 69 or below falls in the lowest two percentile for intellectual functioning). Considering this evidence of Rowland's academic performance prior to age 22 and the medical professionals' doubts about the IQ scores, the ALJ permissibly questioned the validity of the WAIS-IV results. *See Hancock*, 667 F.3d at 474 ("[A]n ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record."); *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998). Accordingly, I find that Rowland did not establish that she met all of the requirements for Listing § 12.05(B), and the ALJ's decision is supported by substantial evidence.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the Commissioner's motion for summary judgment, ECF No. 20, be granted, Rowland's motion for summary judgment ECF No. 16, be denied, and the Commissioner's final decision be affirmed.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk

is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: April 22, 2015

Joel C. Hoppe
United States Magistrate Judge